IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDON CHRISHON POLK,      )
                            )
            Plaintiff,      )
                            )
    v.                      )        1:24cv00744
                            )
D. CLARK, et al.,           )
                            )
            Defendants.     )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Brandon Chrishon Polk, a pretrial detainee proceeding pro se, alleges that his rights were violated by injuriously tight handcuffs. The Defendants include the jailer who applied the handcuffs (Sergeant Clark), a group of bystander jailers (Sergeant Bradsher and Officers J. Williams, S. Williams, Sumpter, and Davis), a nurse (Byrd), the sheriff (Clarence Birkhead), the county (Durham County), the jail (Durham County Detention Center), and the Chief Constable of Durham Constabulary (Rachel Bacon).[1] Sergeant Clark, Sergeant Bradsher, and Sheriff Birkhead have moved to dismiss the claims against them. (Doc. 10.) Polk filed a response in opposition (Doc. 13), along with a

---

[1] Defendants point out that Polk misspelled Sergeant Bradsher's name as "Braysher" in the complaint. (Doc. 11 at 9 n.2.) Defendants themselves, however, fluctuate between referring to him as "Bradsher" and "Bradshear" in their brief. (Contrast id. at 7, with id. at 21.) Because the motion to dismiss spells his name as "Bradsher," the court adopts this spelling. (See Doc. 10.)

supplemental response (Doc. 18). Nurse Byrd has also moved to dismiss the claims against her. (Doc. 19.) Polk filed a response in opposition (Doc. 22), and Nurse Byrd replied (Doc. 23). For the reasons set forth below, the motions to dismiss will be granted in part and denied in part.

## I. BACKGROUND

Polk appears to have been a pretrial detainee at Durham County Detention Center at the time of injuries alleged in this case. (See Doc. 2 at 12.) The facts, taken from the complaint and viewed in the light most favorable to Polk, are as follows:

On August 30, 2021, Polk alleges that Officer J. Williams directed him to pack his belongings because he would be leaving Durham County Detention Center. (Id. at 6.) Dissatisfied with how long Polk was taking, however, Sergeant Clark told Polk that he would pack Polk's belongings instead. (Id. at 7.) Sergeant Clark directed Polk to step outside his cell, then handcuffed him. (Id.) Polk asked Sergeant Clark why he was being placed in handcuffs. (Id.) Polk alleges that he repeatedly told Sergeant Clark that the handcuff was too tight on his right wrist, and that he asked Sergeant Clark to loosen it. (Id.) But according to Polk, Sergeant Clark ignored his requests and asked Officers J. Williams and S. Williams to take Polk downstairs so he could wait with the other detainees. (Id.) Polk "continually yelled and asked for officers to loosen the cuffs," but Officers J. Williams

and S. Williams informed him that they could not loosen the handcuffs because they did not have a key. (Id.)

Around twenty to thirty minutes later, Sergeant Clark returned and escorted Polk to another part of the jail. (Id. at 7-8.) They ran into Officer Davis, who asked Sergeant Clark "about the commotion going on and made a comment to [Sergeant] Clark about [it] being too early to be petty." (Id. at 8.) Sergeant Clark eventually escorted Polk to the booking area, where Polk saw Sergeant Bradsher and Officer Sumpter "behind the control desk and instantly complained about [his] wrist." (Id.) Sergeant Clark left, and Polk "yelled for help" from Sergeant Bradsher and Officer Sumpter to remove the handcuffs due to their tightness. (Id. at 9.) Sergeant Bradsher and Officer Sumpter both informed Polk that they did not have a key, but they assured Polk he "would get out of the handcuffs." (Id.)

Eventually, Sergeant Clark returned and removed the handcuffs. (Id.) Polk alleges that his right wrist bore a "black and purplish bruise from the handcuffs," his "fingers were numb," and he "could not feel [his] hand." (Id.) He "started panicking, yelling and requesting to see a nurse." (Id.) Nurse Byrd came, and Polk asked her for a wrap for his wrist. (Id.) However, Nurse Byrd told him that she did not have a wrap and that "she could not do anything for" him. (Id.)

That same day, Polk was transferred to a facility in Oklahoma.

3

(Id. at 9-10.)  The next day, Polk alleges, a nurse at the new facility gave him medication and a bandage and told him that he had nerve damage in his wrist and fingers due to Sergeant Clark's having handcuffed him too tightly.  (Id. at 10.)  In September 2021, Polk was transferred to a facility in West Virginia where he wore a hand brace until January 2022, when someone took it from him.  (Id.)  A year later, a medical examiner told Polk that he had nerve damage in his elbow.  (Id.)

Polk alleges that these injuries cause him "a lot of pain and problems."  (Id.)  He had difficulty handwriting books, songs, movie scripts, and letters to his girlfriend.  (Id.)  According to Polk, he also began to experience "a [sense] of fear of being put in handcuffs" and a feeling of "pain in [his] wrist whenever officers put [him] in handcuffs."  (Id. at 11.)  Finally, Polk alleges that the tight handcuffs were part of a larger pattern of Sergeant Clark bullying and scaring inmates.  (Id.)  This pattern included "bother[ing Polk] a lot because [Polk] drew pictures on [his] wall" and "cut[ting] the phones off a few times when [Polk] was on them during recreation."  (Id.)

Construing Polk's pro se complaint liberally, it includes the following claims:

- Sergeant Clark used excessive force in violation of the Fourteenth Amendment by handcuffing Polk too tightly (id. at

4

15);[2]

- Sergeant Bradsher and Officers J. Williams, S. Williams, Sumpter, and Davis are liable for Sergeant Clark's constitutional violation pursuant to a theory of bystander liability (id. at 16);

- Nurse Byrd was deliberately indifferent to Polk's serious medical needs, in violation of the Fourteenth Amendment (id. at 17);

- Sergeant Clark committed assault, battery, and gross negligence by handcuffing Polk too tightly (id. at 18, 20);

- All bystander jailers and Nurse Byrd negligently allowed Polk to be injured by the tight handcuffs (id. at 19);

- All Defendants negligently inflicted emotional distress against Polk (id. at 21); and

- Sheriff Birkhead and Constable Bacon negligently hired and/or trained Sergeant Clark (id. at 22).

Polk does not specify which of these claims he intended to bring against Durham County and Durham County Detention Center. (See id. at 15-22.) He does appear to have intended to sue all Defendants in their official and individual capacities. (See id.

---

[2] The complaint only expressly claims violations of the Fourth and Eighth Amendments. (Doc. 2 at 15-16.) However, "a pretrial detainee . . . cannot be subject to any form of 'punishment'"; it is therefore the Fourteenth Amendment's Due Process Clause that governs this case. See Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)).

at 2-3.)

## II. ANALYSIS

### A. Standard of Review

Polk proceeds pro se. Thus, his complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 716 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,

6

952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In a 42 U.S.C. § 1983 lawsuit or a suit seeking redress from a governmental entity, officer, or employee, a district court may sua sponte consider whether a prisoner fails to state a claim and

7

dismiss accordingly.  28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c);

see, e.g., Ford v. Northam, No. 22-cv-00122, 2023 WL 2767780, at

*5 n.9 (W.D. Va. Mar. 31, 2023), aff'd per curiam, 2023 WL 6057493

(4th Cir. Sep. 18, 2023).

### B. Failure to Serve

"If a defendant is not served within 90 days after the

complaint is filed, the court – on motion or on its own after

notice to the plaintiff – must dismiss the action without prejudice

against that defendant or order that service be made within a

specified time."  Fed. R. Civ. P. 4(m).  "But if the plaintiff

shows good cause for the failure, the court must extend the time

for service for an appropriate period."  Id.

Here, Polk has not served Officer S. Williams, Durham County,

or Durham County Detention Center despite being ordered to do so

and provided with forms for this purpose.[3]  (Docs. 6, 7.)  Polk

has also not shown any cause for the failure of service, and more

than 90 days have passed since Polk filed his complaint on

September 3, 2024.  Dismissal is therefore warranted as to all

claims against Officer S. Williams, Durham County, and Durham

County Detention Center.

---

[3] It is possible that the court provided Polk with one less summons form
than the number of Defendants, because the ECF system does not list
Officer S. Williams as a Defendant.  However, this discrepancy does not
explain why Polk failed to serve three Defendants, not just one.

## C.  Claims Against Nurse Byrd

Nurse Byrd asserts that Polk's claims against her must be dismissed pursuant to the Confirmation and Stay Orders entered by the United States Bankruptcy Court for the Southern District of Texas involving her employer Wellpath, LLC ("Wellpath").  (Doc. 20 at 6.)  Alternatively, Nurse Byrd contends that Polk failed to sufficiently serve her with process.  (Id. at 7-9.)  Polk counters that he filed the complaint before Wellpath filed for bankruptcy, and he argues that he properly served Nurse Byrd.  (Doc. 22.)

Nurse Byrd worked on the medical staff at Durham County Detention Center as an employee of Wellpath.  (Doc. 20 at 1.) Wellpath is subject to a bankruptcy reorganization plan approved by a bankruptcy court.  (Doc. 20 at 2; see Doc. 19-2.)  And as Nurse Byrd correctly argues, pursuant to Article IX of the plan, all claims held by currently or formerly incarcerated individuals against employees of Wellpath (to the extent they were acting within the scope of their employment) are released unless either the claimant or the Wellpath employee opted out of the release during the defined period.  (Doc. 19-3 ¶¶ 5-6; see Doc. 19-2 at 128-34.)  Polk had until July 30, 2025, to opt out from the third-party release detailed in the plan, but he did not do so.  Thus, all claims against Nurse Byrd will be dismissed.[4]

---

[4] The approved plan permanently enjoins claimants from both commencing and continuing actions against Wellpath's employees; thus, it does not

## D. Claims Against Constable Bacon

Polk's complaint describes Sheriff Birkhead as the sheriff "during 2021" and Constable Bacon as the "current sheriff." (Doc. 2 at 5.) Typically, "a court accepts all well-pled facts as true" when considering a motion to dismiss. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). But "the court may take judicial notice of certain facts without converting a motion to dismiss to a motion for summary judgment," including facts about whether a public official holds office. See, e.g., White v. Vance County, No. 19-CV-00467, 2020 WL 8474575, at *3 n.2 (E.D.N.C. Dec. 18, 2020).

Here, Defendants argue, and the court takes judicial notice of the fact, that Sheriff Birkhead remains the Sheriff of Durham County (see Doc. 11 at 7), and Rachel Bacon is the Chief Constable of the Durham Constabulary in the United Kingdom (see id. at 7 n.1; Chief Constable Rachel Bacon, Durham Constabulary, https://www.durham.police.uk/police-forces/durham-constabulary/ areas/about-us/about-us/our-people/chief-constable-rachel-bacon/ (last visited Mar. 10, 2026)). Other than Polk's incorrect allegation that Constable Bacon is the current sheriff, Polk has stated no facts connecting her to his alleged injuries. His claims

---

matter that Polk filed his complaint first. (See Doc. 19-2 at 134.) Moreover, because dismissal is appropriate on the grounds set out, the court need not address Nurse Byrd's arguments regarding insufficient service of process. (See Doc. 20 at 7-9.)

against Constable Bacon will therefore be dismissed.

**E.  Official Capacity Constitutional Claims**

Defendants contend that Polk has not alleged any policy or procedure underlying his excessive force claim.  (Doc. 11 at 12.) Further, Defendants assert that Polk has not alleged any policy or decision by Sheriff Birkhead or the sheriff's office "so permanent and well settled as to constitute 'custom or usage' with the force of law."  (Id. (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).)  Polk counters that he has alleged "ongoing, persistent, and widespread" violative conduct against him and other inmates.  (Doc. 18 at 3.)

"Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent . . . ."  Hughes v. Blankenship, 672 F.2d 403, 406 (4th Cir. 1982).  And pursuant to North Carolina law, a sheriff's office and its employees are municipal agents.  Gantt v. Whitaker, 203 F. Supp. 2d 503, 508-09 (M.D.N.C. 2002), aff'd per curiam, 57 F. App'x 141 (4th Cir. 2003); Boyd v. Robeson County, 621 S.E.2d 1, 12 (N.C. Ct. App. 2005).  Thus, the claims against Defendants in their official capacities "are treated as suits against the municipality."  Atkinson v. Godfrey, 100 F.4th 498, 509 (4th Cir. 2024).

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs., 436

11

U.S. 658, 691 (1978). Rather, "[t]o hold a municipality liable for a constitutional violation pursuant to Monell, a plaintiff must establish 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights.'" Johnson v. Baltimore City, 163 F.4th 808, 821-22 (4th Cir. 2026) (quoting Howard v. City of Durham, 68 F.4th 934, 952 (4th Cir. 2023)). The policy or custom may be expressed:

> (1) [T]hrough an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Howard, 68 F.4th at 952 (alterations in original) (quoting Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . ." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion). When a § 1983 claim is based on inadequate training, "the 'complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a "deliberate or conscious" choice by the municipality, and (3) that the officer's conduct

12

resulted from said training.'" <u>Harrington v. S. Health Partners, Inc.</u>, No. 21CV744, 2022 WL 3998750, at *5 (M.D.N.C. Sep. 1, 2022) (quoting <u>Peters v. City of Mount Rainier</u>, No. 14-00955, 2014 WL 4855032, at *5 (D. Md. Sep. 29, 2014)).

Here, the remaining Defendants are all employees of the sheriff's office, meaning that all the remaining official capacity claims against them are claims against a municipality. Yet as Defendants rightly contend (Doc. 11 at 12), Polk has not alleged any express policy, decision by those with final policymaking authority, or widespread practice of using tight handcuffs that led to his alleged injuries. Rather, Polk attempts to allege a failure to properly train officers when he alleges that Sheriff Birkhead

> knowingly, willfully, and intentionally violate[d his] rights with the unlawful use of improper training and negligent hiring of the NC law by employing defendants that continue to use unlawful acts against [Polk] and other inmates of the Durham County Detention Center, which is repeated conduct practiced by their employees without proper supervision.

(Doc. 2 at 22.) This statement, however, is conclusory and fails to allege any facts identified by the court in <u>Harrington</u> as necessary to state an improper training claim. Thus, Defendants' motion to dismiss all constitutional claims against them in their official capacities will be granted.

13

## F. Constitutional Claim Against Sergeant Clark in His Individual Capacity

Defendants next argue that Polk has made only conclusory allegations that do not establish the violation of a clearly established right by Sergeant Clark. (Doc. 11 at 16.) Thus, Defendants assert that Sergeant Clark is entitled to qualified immunity. (Id. at 17.) Polk counters that a reasonable officer would have recognized the unlawfulness of Sergeant Clark's conduct because of Polk's "complaining and yelling." (Doc. 18 at 4.)

"The Fourteenth Amendment Due Process Clause protects pretrial detainees from governmental action that is not rationally related to a legitimate nonpunitive governmental purpose or that is excessive in relation to that purpose." Short v. Hartman, 87 F.4th 593, 608-09 (4th Cir. 2023) (citation modified), cert. denied, 144 S. Ct. 2631 (2024). However, "[q]ualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Davison v. Rose, 19 F.4th 626, 640 (4th Cir. 2021) (quoting Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006)). "Government officials are entitled to qualified immunity unless '(1) the allegations underlying the claim, if true, substantiate the violation of a federal, statutory,

14

or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'" Id. (quoting Ridpath, 447 F.3d at 306). "The plaintiff bears the burden [of proof] on the first prong, and the officer bears the burden on the second prong." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022). As to the second prong, in other words, the officer "bear[s] the burden of proving that the unlawfulness of the[] conduct was not clearly established." Garrett v. Clarke, 74 F.4th 579, 584 (4th Cir. 2023).

"To determine whether a right was clearly established," the Fourth Circuit "look[s] to 'decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose.'" Id. (quoting Hill v. Crum, 727 F.3d 312, 322 (4th Cir. 2013)). "In the absence of controlling authority, however, 'a robust consensus' of persuasive authority may demonstrate the existence of a rule 'that every reasonable official would know.'" Id. (quoting District of Columbia v. Wesby, 583 U.S. 48, 63 (2018)).

Here, Defendants point to no authority indicating that a non-threatening pretrial detainee's right to be free from excessively tight handcuffs was not clearly established. In fact, a consensus of persuasive authority demonstrates that if an officer refuses to check on a non-threatening pretrial detainee who complains that his handcuffs are unreasonably tight, and the tight cuffing causes

15

that person to suffer an actual physical injury, the detainee has stated a claim for excessive force in violation of the Fourteenth Amendment. See, e.g., Karn v. PTS of Am., LLC, 590 F. Supp. 3d 780, 819 (D. Md. 2022); James v. Lee, 485 F. Supp. 3d 1241, 1257 (S.D. Cal. 2020); Hewitt v. Bennett, No. 19-1927, 2020 WL 3420756, at *4 (D.S.C. June 22, 2020); Lefever v. Nicholson, No. 10-CV-01917, 2013 WL 1068817, at *4 (D. Nev. Mar. 14, 2013).

Polk alleges that Sergeant Clark refused to check on or loosen his handcuffs, even though Polk posed no threat and repeatedly complained that his handcuffs were too tight. (Doc. 2 at 6-9.) As a result, Polk alleges that he had to wear a hand brace for months and suffered nerve damage in his right elbow. (Id. at 24.) These allegations are sufficient to state a claim that Sergeant Clark violated a clearly established right pursuant to the Fourteenth Amendment.

**G.  Bystander Liability § 1983 Claims Against Remaining Bystander Jailers in Their Individual Capacities**

Defendants further contend that the bystander jailers are entitled to qualified immunity. (Doc. 11 at 17.) Specifically, Defendants argue that Polk's complaint contains no facts to demonstrate that any bystander jailers knew of an excessive force violation, participated in such a violation, or had reason to believe that the violation occurred. (Id. at 16-17.) Polk counters that his "complaining and yelling" would have led a

16

reasonable officer to know that Sergeant Clark's conduct was unlawful. (Doc. 18 at 4.)

"[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted). The bystander must have "specific knowledge" of the violation, or bystander liability will not attach. Johnson v. Robinette, 105 F.4th 99, 124 (4th Cir. 2024).

Here, Polk alleges that the remaining bystander jailers (Sergeant Bradsher and Officers J. Williams, Davis, and Sumpter) were all present when he complained that his handcuffs were too tight, giving them specific knowledge of Sergeant Clark's alleged constitutional violation.[5] (Doc. 2 at 8-9.) Polk's allegations also suggest that these bystander jailers had reasonable

_____

[5] Polk expressly alleges that he complained about his handcuffs in the presence of all the bystander jailers except Officer Davis. But Polk does allege that he "was still complaining" about his wrist while Sergeant Clark escorted him through the hallway of the jail. (Doc. 2 at 8.) According to Polk, he and Sergeant Clark were then stopped by Officer Davis, "who was making rounds in the pod [across] the hall." (Id.) Officer Davis allegedly asked Sergeant Clark "about the commotion going on and made a comment . . . to [Sergeant] Clark about [it] being too early to be petty," and then Sergeant Davis "talk[ed] to her [Officer Davis] for a few seconds" before taking Polk to the elevator. (Id.) Given the court's obligation to construe the complaint liberally and to view all allegations in the light most favorable to Polk, these allegations, including Officer Davis's admonition to Sergeant Clark that he was being "petty," plausibly allege that Officer Davis had knowledge of Sergeant Clark's use of excessive force yet failed to intervene.

opportunity to, at the very least, ask Sergeant Clark to loosen the handcuffs. (See id.) But they did not do so. (See id.) Accordingly, Polk has sufficiently alleged excessive force claims against the remaining jailers under a theory of bystander liability.

## H. Supervisory Liability § 1983 Claim Against Sheriff Birkhead in His Individual Capacity

Defendants next argue that Polk's complaint fails to allege facts that would demonstrate Sheriff Birkhead's actual or constructive knowledge that his subordinates were "engaged in conduct posing a pervasive and unreasonable risk of constitutional injury." (Doc. 11 at 14.) In fact, Defendants contend that Polk has not alleged facts to show that Sheriff Birkhead "had knowledge of the events at all."[6] (Id.)

While supervisory liability does not exist for official capacity § 1983 claims, it does exist for individual capacity claims. There are three elements necessary to establish supervisory liability pursuant to § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive

---

[6] It is doubtful that Polk has adequately invoked a supervisory liability claim against Sheriff Birkhead in his individual capacity pursuant to § 1983. (See Doc. 2 at 15-22.) Nevertheless, to the extent a liberal construction of Polk's complaint indicates such a claim, this claim will be dismissed.

practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (first quoting Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); and then quoting Slakan v. Porter, 737 F.2d 368, 373, 376 (4th Cir. 1984)).

Here, Defendants argue that Polk has only made conclusory allegations regarding Sheriff Birkhead's knowledge of and causal relationship with Sergeant Clark's conduct. (Doc. 11 at 14; see Doc. 2 at 21-22.) This is correct. The court will therefore dismiss Polk's constitutional claim against Sheriff Birkhead in his individual capacity.

## I. Tort Claims Against Defendants in Their Official Capacities

Defendants next contend that they are protected in their official capacities from Polk's tort claims based on governmental immunity. (Doc. 11 at 17.) Further, Defendants assert that Polk has failed to allege waiver of governmental immunity or to name the surety of the sheriff's office's liability insurance as a party. (Id. at 19.) Polk counters by referencing his previous argument that he has alleged "ongoing, persistent, and widespread" violative conduct by Defendants. (Doc. 18 at 5.)

"Because a suit against a public official in his official capacity operates as a suit against the governmental entity itself, an official sued in this capacity may raise the defense of

19

governmental immunity." Butterfield v. Gray, 866 S.E.2d 296, 301 (N.C. Ct. App. 2021). "Sheriffs, sheriff's deputies, and jailers have all been recognized as public officials who may avail themselves of the defense of governmental immunity." Id.

Governmental immunity applies to any "suit for torts committed while the officers or employees are performing a governmental function," Willis v. Town of Beaufort, 544 S.E.2d 600, 605 (N.C. Ct. App. 2001) (quoting Morrison-Tiffin v. Hampton, 451 S.E.2d 650, 657 (N.C. Ct. App. 1995)), even intentional torts, see Fuller v. Wake County, 802 S.E.2d 106, 111 (N.C. Ct. App. 2017). North Carolina courts have "long deemed the operation of a county jail to be a governmental function." Butterfield, 866 S.E.2d at 301.

To overcome a defense of governmental immunity, "[t]he complaint must specifically allege a waiver of governmental immunity." Phillips v. Gray, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004). Governmental immunity may be waived "when a county purchases liability insurance which provides coverage to a sheriff," Polk v. Stanly County, No. 22CV613, 2024 WL 1287372, at *12 (M.D.N.C. Feb. 23, 2024) (quoting White v. Cochran, 748 S.E.2d 334, 340 (N.C. Ct. App. 2013)), or when a sheriff's bond is purchased pursuant to North Carolina General Statute § 58-76-5, id. (quoting Efird v. Riley, 342 F. Supp. 2d 413, 425 (M.D.N.C. 2004)). In case of a sheriff's bond, the bond "surety . . . is a

20

necessary party to proceedings against the sheriff and sheriff's deputies in their official capacities." <u>Moore v. Barnes</u>, 802 F. Supp. 3d 792, 854 (E.D.N.C. 2025).

Here, as Defendants note, Polk alleges that his injury occurred when Sergeant Clark handcuffed him to move him out of his cell at Durham County Detention Center. (Doc. 2 at 7-9.) In other words, Sergeant Clark's actions were part of the operation of the county jail, a clear governmental function. And as Defendants correctly argue, Polk has failed to allege the waiver of governmental immunity or to name the bond surety as a party to this action. The court will therefore grant Defendants' motion to dismiss Polk's tort claims against the remaining Defendants in their official capacities.

### J. Tort Claims Against Defendants in Their Individual Capacities

Defendants next assert that Polk has not alleged any facts that would demonstrate malice and thereby pierce the shield of public official immunity for his state law tort claims. (Doc. 11 at 19-20.) Polk counters by referencing his previous argument against qualified immunity and the dismissal of his individual capacity § 1983 claims. (Doc. 18 at 3-5.)

"In general, public officials are immune from personal liability in tort when 'engaged in the performance of governmental duties involving the exercise of judgment and discretion.'" <u>Hwang</u>

v. Cairns, 915 S.E.2d 425, 429 (N.C. 2025) (quoting Smith v. Hefner, 68 S.E.2d 783, 787 (N.C. 1952)). Only public "officials" – not public "employees" – are eligible for this form of immunity. See id. at 429-30. North Carolina courts have held that sheriffs and jailers are public officials. See Lee v. County of Cumberland, No. COA17-446, 2018 WL 710085, at *8 n.4 (N.C. Ct. App. Feb. 6, 2018); Baker v. Smith, 737 S.E.2d 144, 151-52 (N.C. Ct. App. 2012).

Public official immunity does not apply, however, to "actions performed outside of the scope of official duties or those done with malice or corruption." Hwang, 915 S.E.2d at 429. "[A] malicious act is one which is '(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another.'" Bartley v. City of High Point, 873 S.E.2d 525, 534 (N.C. 2022) (quoting Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012)). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (quoting Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001)). Further, in the context of intentional torts, "wanton and reckless behavior may be equated with an intentional act." Id.

In Bartley, the Supreme Court of North Carolina held that excessively tight handcuffs – which created red marks and bruises on an arrestee's wrist – were evidence of malice, where the arrestee was not resisting and the officer refused to loosen the

handcuffs.  See Bartley, 873 S.E.2d at 535.  Similarly, Polk here alleges that Sergeant Clark acted "knowingly, willfully, and intentionally," that Sergeant Clark refused to loosen the handcuffs despite Polk's repeated complaints, that Polk had not been resisting, and that Polk ultimately suffered serious injuries from the incident.  (Doc. 2 at 7-9, 15, 24.)  These allegations are similar enough to the evidence of malice described in Bartley to pierce public official immunity for Sergeant Clark as to Polk's assault, battery, and gross negligence claims.

The remaining tort claims, however, are a different story. First, as to all negligence and negligent infliction of emotional distress claims, public official immunity "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties."  Bartley, 873 S.E.2d at 533.  Moreover, North Carolina law contains no clear authority for bystander liability for tort claims, even when the intentionality of the injury pierces public official immunity for the primary tortfeasor.  See Santiago v. McClaskey, No. 12CV93, 2014 WL 944723, at *8 (M.D.N.C. Mar. 11, 2014), aff'd per curiam sub nom., Garcia v. McClaskey, 693 F. App'x 236 (4th Cir. 2017).  Polk's claims for negligence and negligent infliction of emotional distress will therefore be dismissed.

23

Second, Polk has not stated a claim for negligent hiring or training against Sheriff Birkhead. Pursuant to North Carolina law, a claim of negligent employment or training requires the following:

> (1) the specific negligent act on which the claim is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the [employer] of such unfitness or bad habits, or constructive notice, by showing that the [employer] could have known the facts had he used ordinary care in oversight and supervision . . . ; and (4) that the injury complained of resulted from the incompetency proved.

Nance v. Rowan-Salisbury Bd. of Educ., 336 F. Supp. 3d 593, 597 (M.D.N.C. 2018) (alterations in original) (quoting Cloaninger v. McDevitt, 555 F.3d 324, 337 (4th Cir. 2009)).

Here, Defendants argue, and the court agrees, that Polk has made only conclusory allegations regarding Sheriff Birkhead's knowledge of and causal relationship to Sergeant Clark's injurious conduct. (See Doc. 2 at 21-22.) Polk has therefore failed to state any tort claims against Sheriff Birkhead in his individual capacity, and those claims against him will be dismissed.

### K. Statute of Limitations

Finally, Defendants argue that Polk's claims are barred by the statute of limitations. (Doc. 11 at 21.) Polk contends his complaint was timely. (Doc. 18 at 5-6.)

24

In cases brought pursuant to § 1983, courts "apply the statute of limitations for personal injuries of the state in which the alleged violations occurred." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Thus, "§ 1983 claims arising in North Carolina are limited by 'the three-year period for personal injury actions set forth in [N.C. Gen. Stat.] § 1-52(5).'" Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 67 (4th Cir. 2015) (quoting Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1162 n.2 (4th Cir. 1991)). Generally, prisoners are not barred by the statute of limitations so long as they deliver their complaint to the prison authorities for mailing to the clerk of the district court before the three-year deadline has passed.[7] See Lewis v. Richmond City Police Dep't, 947 F.2d 733, 734-36 (4th Cir. 1991) (per curiam); LaKemper v. Huneycutt, No. 24-CV-00118, 2026 WL 19419, at *1 n.2 (W.D.N.C. Jan. 2, 2026).

Here, Polk alleges he was injured by Defendants on August 30, 2021, making his statutory deadline August 30, 2024. (Doc. 2 at

---

[7] There is a complication for state law claims: "if state law requires a plaintiff to serve process 'before the statute of limitations has run,' a federal court must enforce the same requirement." Allen v. Atlas Box & Crating Co., 59 F.4th 145, 148 n.2 (4th Cir. 2023) (quoting Henderson v. United States, 517 U.S. 654, 657 n.2 (1996)). However, North Carolina appears to require service before the statute of limitations deadline only for certain automobile-related personal injury claims, not tort claims of the type Polk brings here. See Dean v. Rousseau, 874 S.E.2d 613, 616 (N.C. Ct. App. 2022) (holding that service was required before statute of limitations ran in automobile-related personal injury claim while noting that this requirement does not exist for "other civil matters").

25

6.)  His complaint is signed on August 29, 2024 (Doc. 1 at 30), and it would be deemed timely filed if delivered to the jailer for mailing by the deadline.  Polk claims he mailed his complaint "days before" this deadline.  (Doc. 18 at 5.)  Though this seems somewhat inconsistent with the date of the document, it does not rule out the possibility of a timely filing.  Thus, Defendants fail to establish that the face of the complaint demonstrates that it is untimely.  See Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) ("To succeed on a statute-of-limitations defense at th[e 12(b)(6)] stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007))).  Defendants' motion to dismiss on this ground will therefore be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant Byrd's motion to dismiss (Doc. 19) is GRANTED, and Plaintiff Polk's claims against Nurse Byrd are DISMISSED.

IT IS FURTHER ORDERED that all of Polk's claims against Defendants S. Williams, Durham County, and Durham County Detention Center are DISMISSED WITHOUT PREJUDICE for insufficient service of process pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

26

IT IS FURTHER ORDERED that Defendants Clark, Bradsher, and Birkhead's motion to dismiss (Doc. 10) is GRANTED as follows:

1.  As to all claims against Defendants Bacon and Birkhead; and those claims are DISMISSED.

2.  As to all claims against Defendants Clark, Bradsher, J. Williams, Sumpter, and Davis in their official capacities; and those claims are DISMISSED.

3.  As to all state law tort claims against Defendants Bradsher, J. Williams, Sumpter, and Davis in their individual capacities; and those claims are DISMISSED.

In all other respects, the motion to dismiss is DENIED.

This leaves as the remaining claims: (1) an excessive force claim against Sergeant Clark in his individual capacity pursuant to the Fourteenth Amendment; (2) the same excessive force claim against Sergeant Bradsher and Officers J. Williams, Davis, and Sumpter in their individual capacities pursuant to a theory of bystander liability; and (3) assault, battery, and gross negligence claims against Sergeant Clark in his individual capacity pursuant to North Carolina tort law.

> /s/  Thomas D. Schroeder
> United States District Judge

March 12, 2026

Case 1:24-cv-00744-TDS-LPA   Document 24   Filed 03/12/26   Page 27 of 27